IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAWN WOODDELL,

      Plaintiff,

vs.                                  Civil Action 2:05-CV-311
                                     Magistrate Judge King

FEDERAL HOME LOAN MORTGAGE
CORPORATION, et al.,

      Defendants.

**OPINION and ORDER**

On March 4, 2005, Plaintiff, Shawn Wooddell [hereinafter "Plaintiff"], filed an action in the Common Pleas Court of Franklin County, Ohio, seeking specific performance of a contract to purchase a parcel of real estate, as well as monetary damages for the alleged breach of that contract. On April 4, 2005, Defendants removed this action to this Court pursuant to 12 U.S.C. § 1452(f)(3). With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on Defendants' motion to dismiss, Doc. No. 2.

**I.    Background**

Plaintiff alleges that Defendants, Federal Home Loan Mortgage Corp. and ABM AMRO Mortgage Group, Inc. [collectively hereinafter "Defendants"], held title to residential property located at 753 Rebecca Avenue, Westerville, Ohio [hereinafter the "Property"]. *Complaint,* at ¶ 1. On March 1, 2005, Defendants offered the Property for sale for $157,900.00 by publishing the

listing with the Columbus and Central Ohio Multiple Listing Service [hereinafter "MLS"]. *Id.,* at ¶ 2; *see* MLS Listing, attached as Exhibit A to *Complaint*. On that same date, Plaintiff saw the MLS listing, viewed the Property and signed and submitted a Real Estate Purchase Contract [hereinafter "*Purchase Contract*"], agreeing to buy the Property for $157,900.00. *Id.*, at ¶ 4;[1] *see Purchase Contract*, attached as Exhibit B to *Complaint*. Defendants never signed this *Purchase Contract*. *Id.* Plaintiff maintains that a contract was nevertheless formed and that Defendants acted in breach of that contract when they refused to transfer title to the Property to plaintiff. *Id.,* at ¶ 5.

## II.  Motion to Dismiss

### A.  Standard

Defendants move to dismiss the case pursuant to Rule 12(b)(6), which provides in relevant part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether in a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
> \*  \*  \*  \*
> (6) failure to state a claim upon which relief can be granted ....

Fed. R. Civ. P. 12(b)(6). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Community Mutual Ins. Co.,* 896 F. Supp. 734,

---

[1] The *Purchase Contract* actually set the purchase price at $159,900.00, but would have required the Defendants to pay $2,000.00 in closing costs. Exhibit B to *Complaint*.

738 (S.D. Ohio 1994). The complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, this Court will grant Defendants' motion to dismiss under Rule 12(b)(6) if the complaint is without merit because of an absence of facts or law to support the claims asserted, or if on the face of the complaint there is an insurmountable bar to relief. *See generally, Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

**B.     Application**

Plaintiff seeks specific performance and monetary damages in connection with Defendants' alleged breach of a real estate contract. In order for Plaintiff to recover on his contractual theory, he must show that a valid contract existed between the parties. "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski v. Fallet,* 2 Ohio St.3d 77, 79 (1982). An "offer" has been defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Leaseway Distrib. Centers, Inc. v. Ohio Dept. of Adm. Serv.,* 49 Ohio App.3d 99, 105 (10th Dist., 1988).

Plaintiff characterizes the MLS listing as Defendants' offer for the sale of the Property, which he accepted by his tender of the *Purchase Contract* for the asking price. However, an MLS listing does not constitute an offer which a prospective purchaser may accept. *Holstrom v. Land,* 2001 WL 1509217 (9th Dist. 2001); *Hanes v. Davis,* 62 Ohio Misc. 2d 468, 470-71 (Highland Cy. Ct. Comm. Pl. 1992). "At its very best, the listing agreement [merely] constitutes an invitation for third parties to make an offer." *Hanes,* 62 Ohio Misc. 2d at 470. In real estate transactions, the

3

offeror is generally viewed as the party who agrees to purchase the property and who may incorporate the terms of the listing into a sales agreement. *Id.* (citing *Roskwitalski v. Reiss*, 487 A.2d 864, 867 (Pa. 1985)). In the case at bar, Plaintiff effectively made an offer when he tendered the *Purchase Contract* on March 1, 2004. However, Defendants never accepted this offer. Under these circumstances, this Court concludes that no contract existed between Plaintiff and Defendants.

Moreover, the Court rejects Plaintiff's contention that the tender of the signed Purchase Contract for the asking price reflected in the MLS listing qualified as an acceptance of all material terms of Defendants' offer to sell the property. First, it cannot be said that the parties -- including Plaintiff -- regarded the MLS listing as an offer available for acceptance by Plaintiff. For example, the form used by Plaintiff clearly anticipated that both the buyer and seller would sign the form. *Purchase Contract,* at p.1 ["The *undersigned* buyer agrees to buy and the *undersigned* seller agrees to sell ... ."]; *Id.,* at p.5 ["Upon acceptance of this contract by both parties *in writing* ... ."] The *Purchase Contract* also clearly contemplated some further affirmative action by Defendants: "Duration of Offer: This offer shall be open for acceptance through 6:00 p.m. 3/1/05." *Id.,* at p. 7. Second, Plaintiff's *Purchase Contract* included material terms not contained in the MLS listing. For example, although the MLS listing indicated that the Property was sold "As Is," *MLS Listing,* Exhibit A to *Complaint,* the *Purchase Contract* required Defendants to purchase a home maintenance plan and gas line warranty, *Purchase Contract,* at p. 4. Furthermore, the MLS listing made no mention of appliances, *see MLS Listing,* Exhibit A to *Complaint,* yet Plaintiff's *Purchase Contract* required that the gas range and all window treatments remain. *Id.,* at p. 2. Finally, it is significant that, although the MLS listing expressly provided that a letter reflecting prior qualification for financing "MUST accompany all offers," *MLS Listing,* Exhibit A to *Complaint,*

Plaintiff's *Purchase Contract* represented that Plaintiff "shall deliver a written lender's pre-approval letter for said premises ... within 1 calendar day[] after written acceptance of this contract." *Purchase Contract,* at p. 1. Thus, even if the MLS listing constituted an offer capable of acceptance, which it did not, Plaintiff's *Purchase Contract*, which materially altered certain terms of the MLS listing, could only be characterized as a rejection and counter-offer rather than an acceptance. *See Karas v. Brogan,* 55 Ohio St.2d 128 (1978); *Foster v. Ohio State University,* 41 Ohio App.3d 86, 88 (10th Dist. 1987).

**WHEREUPON** Defendants' motion to dismiss, Doc. No. 2, is meritorious and it is therefore **GRANTED**.

This action is hereby **DISMISSED.**

June 17, 2005               *s/ Norah McCann King*
                            Norah McCann King
                            United States Magistrate Judge